IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CR-86-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| JEREMY RANDOLPH MARTIN, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. (DE 38). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert T. Numbers II entered a memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motion be denied. (DE 44). Defendant timely objected to the magistrate's recommendation and the government's time for response has passed. For the reasons given more specifically below, the court adopts the recommendation of the magistrate judge, albeit on different grounds, and denies defendant's motion.

**STATEMENT OF THE CASE**

On March 18, 2015, a grand jury returned a two count indictment charging defendant with receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

Defendant filed the instant motion to suppress on December 16, 2015. Therein, defendant raises three arguments. Defendant first argues that he was the subject of an unconstitutional search,

and that all the evidence subsequently obtained, including evidence obtained by warrantless seizure and statements made by defendant, is fruit of the poisonous tree. In the alternative, defendant argues certain physical evidence should be suppressed where that evidence was obtained from his laptop computer, cell phone, and USB thumb drive, all of which allegedly were illegally seized without a warrant and without exigent circumstances to support a warrantless seizure. Finally, defendant argues that certain incriminating statements made after that warrantless seizure also should be suppressed as fruit of the poisonous tree, where the seizure unlawfully extended defendant's detention.

The court referred defendant's motion for M&R on December 18, 2015. The magistrate judge held an evidentiary hearing on defendant's motion on January 20, 2016. M&R entered on February 3, 2016. Therein, the magistrate recommends that the court deny defendant's motion to suppress. The magistrate judge bases his recommendation on two, independent grounds. First, the M&R recommends denying defendant's motion as untimely, where it was filed some two weeks after the Rule 12(c) period set by the court and without good cause. Second, the M&R recommends denying defendant's motion on the merits. Defendant's timely objections followed on February 17, 2016.

## STATEMENT OF FACTS

The facts preceding defendant's indictment may be summarized as follows. Defendant is a convicted sex offender who, on February 21, 2014, was released from the State of North Carolina's custody subject to the following pertinent restriction: "submit at reasonable times to searches of [his] person, premises, or any vehicle under [his] control by [his] supervising [probation] officer for purposes reasonably related to [his] supervision." (DE 38-2).

2

On May 21, 2014, Microsoft Corporation ("Microsoft") reported to the National Center for Missing and Exploited Children ("NCMEC") a probable violation of 18 U.S.C. § 2252. In particular, Microsoft reported that an account registered with its cloud storage service, OneDrive, had been used to upload at least four potentially pornographic images depicting minors. (DE 38-3). Microsoft provided NCMEC with the email address tied to the OneDrive account in question, howlingwolf.martin7072@gmail.com; the name in which the account was registered, Jeremy Martin; the internet protocol address of the device used to transmit the images; and copies of the images themselves.

On May 22, 2014, the NCMEC reported to the North Carolina State Bureau of Investigation ("SBI") the probable criminal conduct. Using the information supplied by Microsoft in conjunction with internet and law enforcement database searches, the SBI and the Raleigh Police Department ("RPD") positively identified "Jeremy Martin," the owner of the OneDrive account, as defendant. RPD Detective Ouellette ("Ouellette") identified defendant as a sex offender registered in North Carolina, and identified his address as the South Wilmington Street Center, a shelter for homeless men in Raleigh.

On May 30, 2014, Ouellette prepared and obtained a search warrant for the OneDrive account in question. That search warrant was served on Microsoft the same day, and Microsoft provided RPD with the results of that search warrant on July 11, 2014. Those results included the four allegedly pornographic images originally reported to NCMEC, as well as images that Ouellette believed to be of defendant. In addition, the results of the search warrant informed Ouellette that the images had been uploaded using a computer running Microsoft's "Windows" operating system.

3

When Ouellette arrived at work on the morning of July 25, 2014, he opened an email, dated July 24, 2014, from another RPD officer that piqued his interest in finding defendant. The email informed Ouellette of a police report from July 24, 2014, which connected defendant to a laptop computer and child pornography. In particular, on the evening of July 24, defendant had become upset because another resident of the South Wilmington Street Center, who also was a convicted sex offender, had unauthorizedly used defendant's laptop. The incident had drawn the attention of law enforcement and, at the time, defendant reported to the investigating RPD officer that he was afraid the unauthorized user would use his computer to look at child pornography. After reviewing the report, Ouellette became convinced that if he did not find defendant soon, that defendant would overwrite the files on, or outright destroy, his computer as a result of the July 24 incident.

That same morning, shortly after reading the email, Ouellette contacted defendant's probation officers ("Murphy" and "Morris"). Murphy and Morris confirmed defendant's living arrangement at the South Wilmington Street Center and agreed to meet Ouellette there. However, after arriving, Ouellette, Murphy, and Morris learned that defendant had departed the South Wilmington Street Center for the day.[1]

Ouellette, Murphy, and Morris searched for defendant in downtown Raleigh. Eventually, with the help of additional RPD officers, Ouellette, Murphy, and Morris located defendant at a soup kitchen in Raleigh. Murphy and Morris reminded defendant that he was required to submit to warrantless searches as a condition of his pretrial release and subsequently searched defendant. Murphy and Morris discovered the thumb drive on defendant and turned that item over to Ouellette. Meanwhile, Ouellette observed defendant's laptop lying on the ground and seized it. During

---

[1] The shelter required residents to leave during day-time hours. (Hrg. Tr., DE 47, 37:11–15).

Murphy and Morris's search of defendant's person, the RPD officer that previously had found defendant at the soup kitchen located defendant's cell phone inside and brought it out to Ouellette. There is no evidence that Ouellette, Murphy, or Morris specifically had asked defendant about child pornography before Murphy and Morris searched defendant or before Ouellette seized his personal items.

Following Murphy and Morris's search of defendant's person and Ouellette's seizure of his effects, Ouellette asked defendant if he would be willing to discuss "suspicious activity over the internet that was traced back to him." (DE 38-4, 4). Defendant agreed and subsequently confessed to downloading child pornography and storing it on his computer. In particular, defendant admitted that he owned the email address howlingwolf.martin7072@gmail.com, he was the owner of the OneDrive account, and that he had downloaded child pornography. Defendant further explained that his OneDrive account automatically backed up pictures saved to his computer and also identified one of the images provided to NCMEC by Microsoft as one he previously had downloaded. Following this conversation, defendant accompanied Murphy and Morris to the South Wilmington Street Center, where the probation officers searched a storage locker defendant maintained there.

On December 2, 2014, Ouellette obtained a search warrant for defendant's laptop and cell phone. Execution of that search warrant uncovered child pornography.

**COURT'S DISCUSSION**

A.  Standard of Review

The district court reviews <u>de novo</u> those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a <u>de novo</u> review where a party makes only "general and conclusory objections that do not direct the court to a

5

specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.     Analysis[2]

Defendant concedes that Murphy and Morris's search was constitutional.[3] However, defendant maintains that Ouellette's seizure of his personal effects violated the Fourth Amendment.

The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The "most basic principle" of Fourth Amendment jurisprudence is that warrantless seizures "are presumptively unconstitutional." See United States v. Yengel, 711 F.3d 392, 396 (4th Cir. 2013). In other words, law enforcement generally cannot seize a suspect's property without a warrant, even where probable cause to do so exists. Coolidge v. New Hampshire,

---

[2] The M&R recommends denying defendant's motion to dismiss as untimely. Because the parties, as well as the magistrate judge, addressed the merits of defendant's motion, the court elects not to analyze the timeliness of defendant's motion and, instead, will proceed to its merits. In any event, if the court were to consider the government's timeliness argument, the court likely would deny defendant's motion as untimely. Although defense counsel contends that the tardiness of the motion resulted from difficulty in communicating with defendant, the court observes that defense counsel had in excess of six months past the original deadline for the filing of pretrial motions to file the instant motion to suppress. In addition, defense counsel filed this motion some two weeks after the deadline for filing pretrial motions had expired, and inexplicably failed to submit a motion for extension of time. Thus, although the court does not rely on the untimeliness of defendant's motion to suppress, the court does not condone defense counsel's tardiness and, in the alternative, would hold that the motion properly is denied where it was filed out of time as a result of counsel's "negligence, oversight, or laziness." United States v. Chavez, 902 F.2d 259, 263–64 (4th Cir. 1990).

[3] The magistrate judge recommends denying defendant's motion insofar as it argues that Murphy and Morris's search was unconstitutional simply because it was conducted at the behest of Ouellette. Defendant does not specifically object to this conclusion, and the court finds no clear error. See United States v. Midgette, 478 F.3d 616, 625–26 (4th Cir. 2007).

6

403 U.S. 443, 468 (1971) ("[Generally,] no amount of probable cause can justify a warrantless search or seizure.") (collecting cases). However, "there are 'a few specifically established and well-delineated exceptions' to the search warrant requirement." United States v. Brown, 701 F.3d 120, 126 (4th Cir. 2012) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). These narrowly-defined exceptions are grounded in the concept of "reasonableness," which is the "touchstone of the Fourth Amendment." Kentucky v. King, 563 U.S. 452, 459 (2011).

One well-established exception holds that no warrant is required where "'the exigencies of [a] situation' make the needs of law enforcement so compelling that [a] warrantless search [or seizure] is objectively reasonable under the Fourth Amendment." King, 563 U.S. at 460 (second alteration in original) (quoting Mincey v. Arizona, 437 U.S. 385, 394 (1978)).[4] The types of exigent circumstances that justify a warrantless seizure include, among other things, the "imminent destruction of evidence." Brown, 701 F.3d at 126. This is true "[e]ven if exigent circumstances have been created by actions of the police," id., as long as the police do not "create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." King, 563 U.S. at 462.

To determine whether such "exigent circumstances" justify a warrantless seizure, courts weight the following non-exclusive list of factors: 1) "the degree of urgency involved and the amount of time necessary to obtain a warrant"; 2) "the officer's reasonable believe that the contraband is about to be removed or destroyed"; 3) "information indicating the possessors of the

---

[4] A warrantless seizure of property, at issue here, also requires "'probable cause to believe that [the property] holds contraband or evidence of a crime.'" United States v. Brown, 701 F.3d 120, 127 (4th Cir. 2012) (alterations in original) (quoting United States v. Place, 462 U.S. 696, 701 (1983)). Defendant does not challenge the fact that probable cause existed to believe that his laptop, cell phone, and thumb drive all contained evidence of a crime. Thus, the court does not address this point.

7

contraband are aware that the police are on their trail"; and 4) "the ready destructibility of the contraband." United States v. Reed, 935 F.2d 641, 642 (4th Cir. 1991) (per curiam). These factors must be weighed "as of the moment of the warrantless [seizure]," and must be evaluated through the eyes of a "reasonable and prudent man standing in the shoes of the officer[]." Id. at 643.

On the facts of this case, the Reed factors favor a finding of exigent circumstances. At the time Ouellette seized defendant's laptop, cell phone, and thumb drive, Ouellette did not have a warrant. If Ouellette had been required to obtain a warrant without first seizing those items, defendant would have had the opportunity to destroy valuable evidence. In particular, under those circumstances defendant would have had the opportunity to smash or otherwise physically destroy each of the three items seized by Ouellette. Moreover, even though information saved, for example, on defendant's laptop could have been recovered if it had been deleted, (Hrg. Tr. 43:16–44:21), there was nothing to stop defendant from physically destroying each of the items beyond repair. This is especially true, where, as here, defendant was unrestrained.

In addition, at the time of the warrantless seizure, it was reasonable for Ouellette to believe that defendant knew the police were "on his trail." Just hours prior to the seizure, on July 24, 2014, defendant had been involved in an altercation concerning his laptop. At the culmination of that altercation, defendant reported to a RPD officer that he was afraid that another resident of the South Wilmington Street Center would use his laptop to view child pornography. Considering defendant's July 24 statements about child pornography, the closeness in time between the July 24 incident and the seizure, Ouellette's knowledge of defendant's criminal history, and the information Ouellette obtained from the search warrant in tandem, a reasonable officer could have believed that defendant knew the police were "on his trail," so as to support a warrantless seizure.

8

It makes no difference to the court's conclusion that defendant was supervised by his probation officers for the period immediately following his encounter with Ouellette. As an initial matter, defendant still was unrestrained and could have used physical force to destroy any evidence contained on his laptop, cell phone, or thumb drive. In addition, defendant's probation officers only accompanied him back to the South Wilmington Street Center to search his locker. It could not be guaranteed that Ouellette would obtain a warrant to seize defendant's effects so quickly that such a warrant could be served while defendant still was under Murphy and Morris's supervision.

Moreover, the court does not find it determinative that neither Ouellette, Murphy, nor Morris had mentioned to defendant Ouellette's intention to search for child pornography. The sum of all the circumstances known to Ouellette at the time he made the seizure of defendant's property made it reasonable for him to believe that defendant knew police were "on his trail." On July 24, defendant made certain statements to a RPD officer about child pornography and indicated that he feared another registered sex offender who lived at the South Wilmington Street Center would use his laptop to view child pornography. The next day, Ouellette, Murphy, and Morris approached defendant. Taking the closeness in time between the July 24 incident and Ouellette's July 25 contact with defendant, the content of defendant's July 24 statements, the evidence obtained from Microsoft, and Ouellette's knowledge of defendant's criminal history together, it was reasonable for Ouellette to believe that defendant knew that police were "on his trail." Thus, it was reasonable for Ouellette to believe that exigent circumstances existed to support his warrantless seizure of defendant's effects.

Defendant attempts to diffuse the connection between the July 24 incident and July 25 seizure of defendant's effects. To support his argument, defendant directs the court's attention to

9

United States v. Bradley, 571 F.2d 787 (4th Cir. 1978). However, Bradley is inapposite. In Bradley, the Fourth Circuit held that the passage of time undermined law enforcement's claim of exigent circumstances to support a warrantless search. In particular, late one evening law enforcement received a tip that the defendant, a convicted felon, was in possession of a firearm. Six hours later, law enforcement initiated a warrantless search of the defendant's home. The Fourth Circuit reasoned that because law enforcement "waited six hours after receiving information of the secreted weapon before conducting the search, it cannot be said that exigent circumstances here justified circumventing the warrant requirement." Id. at 790.

Defendant cites Bradley in an attempt to suggest that the passage of time nullifies any claimed exigency. However, Bradley addresses the existence of exigent circumstances supporting a warrantless search. See United States v. Ramapuram, 632 F.2d 1149, 1152 & n.8 (4th Cir. 1980) (describing Bradley as addressing a dissipation in exigent circumstances supporting a search due to the passage of time). By contrast, this case concerns a warrantless seizure following a lawful search. Unlike in Bradley, where the passage of time made it unreasonable to search the defendant's home without a warrant, the exigent circumstance at issue here, the fear that defendant would destroy evidence, was real and arose at the time the lawful search was conducted.

Moreover, although defendant claims that the exigency, if any, actually arose on July 24, and thus no longer existed at the time of Ouellette's July 25 seizure, that argument ignores the very real consequences of the July 25 encounter between Ouellette and defendant. From the vantage point of a reasonable person standing in Ouellette's shoes, the July 25 contact between Ouellette, Murphy, and Morris on the one hand, and defendant on the other, alerted defendant to the fact that law enforcement was "on his trail." On July 24, defendant had made mention of a registered sex

10

offender using his computer to view child pornography. The next day, Ouellette, Murphy, and Morris made contact with defendant without warning. A reasonable person in Ouellette's position would understand defendant to believe that the police were closing in on him, especially given the not-so-serendipitous connection between the July 24 and July 25 events. Considering the connection between the July 24 and 25 events in conjunction with the wealth of other information known to Ouellette at the time, the court finds unavailing defendant's argument that any exigency arose on July 24 and had dissipated by the time of Ouellette's seizure.

In sum, notwithstanding Ouellette's lack of a warrant, the seizure of defendant's property was constitutional. First, defendant concedes that Ouellette had probable cause to believe that defendant's laptop, cell phone, and thumb drive contained child pornography. In addition, because defendant knew that law enforcement was "on his trail," and because defendant easily could have destroyed any incriminating evidence on his laptop, cell phone, or thumb drive before a warrant could be obtained, exigent circumstances existed such that it was reasonable for Ouellette to seize immediately defendant's property.[5]

## CONCLUSION

Based on the foregoing, upon de novo review of those portions of the M&R to which specific objections were made, and considered review of the remainder thereof, the court ADOPTS the recommendation of the magistrate judge, albeit on different grounds, and DENIES defendant's

---

[5] In his motion, defendant conclusorily argues that statements he made to Ouellette following the seizure should be suppressed as "fruit of the poisonous tree" because they followed an allegedly illegal search and seizure. Because the court adopts the magistrate judge's recommendation as to the legality of Murphy and Morris's search of defendant, and because the court herein dispenses with defendant's contentions as to the illegality of Ouellette's warrantless seizure of his effects, the court need not reach defendant's third argument.

11

motion to suppress. (DE 38). Consistent with the court's February 5, 2016, order continuing defendant's arraignment, said arraignment hereby is set for the June 14, 2016, term of court.

SO ORDERED, this the 18th day of April, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge